# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ) <br> ) <br> JORDON H. KAISER ) <br> ) <br>     Debtor. ) <br> ) <br> DEBORAH EBNER, ) <br> ) <br>     Plaintiff-Appellee, ) <br> ) <br>     v. ) <br> ) <br> DORIS KAISER, ) <br> ) <br>     Defendant-Appellant. ) | No. 14 C 10108 <br><br> Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

Defendant-appellant Doris Kaiser ("Doris") appeals to this Court, pursuant to 28 U.S.C. § 158(a)(1), from a decision of the United States Bankruptcy Court holding that certain jewelry, art, and silver purchased for Doris by her husband, Jordon Kaiser ("Jordon"), were part of his bankruptcy estate. For the reasons stated below, the bankruptcy court's decision is affirmed.

## BACKGROUND

This appeal arises out of a four-count adversary complaint filed in Jordon's Chapter 7 bankruptcy proceedings by the bankruptcy trustee, Debra Ebner ("the Trustee"). Doris is the named defendant. At issue is whether certain valuables that Jordon purchased years ago as gifts for Doris should be included in Jordon's bankruptcy estate. (Appellant's Br. 1-2.)

Jordon filed for bankruptcy on October 12, 2011. (Compl. ¶¶ 1-2.) In his bankruptcy schedules, Jordon represented that "all personal property at home [was] owned by wife, Doris." (Schedule B, Bankr. N.D. Ill. 11-41555, ECF No. 10.) According to a homeowner's insurance

policy Jordon and Doris had jointly extended only five months prior to the filing of the bankruptcy petition, which covered all of the itemized and non-itemized personal property owned by Jordon and Doris at their marital residence, including jewelry and fine art, this personal property was worth in excess of $1.9 million. (Statement of Undisputed Material Facts in Supp. of Summ. J. ("Statement") ¶¶ 13-16.) Jordon passed away on February 17, 2012. (*Id.* ¶ 7.)

On March 25, 2013, the Trustee filed her original complaint in this adversary proceeding against Doris. The complaint seeks an accounting of defendant's personal property pursuant to 11 U.S.C. § 542(a) (Count I); the turnover of the personal property to the bankruptcy estate (Count II); the invalidation of any transfer of the personal property to Doris pursuant to 11 U.S.C. § 544(b)(1) and 750 ILCS 65/9 (Count III); and a declaratory judgment determining that the personal property in question is property of the bankruptcy estate (Count IV).

In her answer and discovery responses, Doris took the position that, with a few enumerated exceptions, Jordon had gifted all of the couple's personal property to her, and the personal property was not part of the bankruptcy estate. (*Id.* ¶ 18; Appellant's Br. Ex. 2.)

## **PROCEDURAL HISTORY**

On September 17, 2014, the bankruptcy court explained that it would deny the Trustee's motion for summary judgment as to Count I, but grant the Trustee's motion for summary judgment as to Counts II, III, and IV of the amended complaint.[1] (Appellant's Br., Ex. 8, Bankr. Ct. Tr., at 25-26.)

The Trustee's position was (and is) that Jordon, having purchased the personal property in dispute, was the owner of the property, and under section 9 of the Illinois Rights of Married

---

[1] As to Count I, the court reasoned that the Trustee has essentially received whatever accounting to which she was entitled.

Persons Act, 750 ILCS 65/9, any gift of that property to Jordan's spouse had to be recorded in order to be valid as against the rights of any third person. (*Id.* at 19-20; *see* Am. Compl. ¶¶ 20-25.) It is undisputed that Jordon and Doris did not record the gifts. (Statement ¶ 19; Appellant's Br., Ex. 8, at 21.) Consequently, the court held, it is clear under Illinois law that the gifts were not validly transferred from Jordon to Doris, as far as any third party was concerned, and the court granted summary judgment for the Trustee. (Appellant's Br., Ex. 8, at 21.)

Doris argued that Jordon purchased but never took ownership of the property; each item was transferred directly from the seller to Doris. Thus, there was never actually any transfer between spouses that would have to be recorded. The court explained that this new argument was inconsistent with Doris's answer and responses to interrogatories, in which she took the position that the property was gifted to her by her husband, and the court therefore declined to consider it. (*Id.* at 21-23 (citing *Gadaleta v. Nederlandsch-Amerekaansche Stoomvart*, 291 F.2d 212, 213 (2d Cir. 1961)).)

The court concluded that no question of material fact existed to prevent a ruling of summary judgment in the Trustee's favor. (Appellant's Br., Ex. 8, at 24.) Since the Rights of Married Persons Act requires that a post-marital gift be properly recorded, transfers that are not recorded are subject to recovery by the giving spouse's creditors. (*Id.*) The court ruled that summary judgment for the Trustee was appropriate on Counts II, III, and IV. (*Id.* at 25.) This appeal followed.

## ANALYSIS

This Court has jurisdiction to review final bankruptcy court decisions. 28 U.S.C. § 158(a)(1); Fed. R. Bankr. P. 8001, 8002. The parties agree that this Court's review of the bankruptcy court's grant of summary judgment is *de novo*.

**I.      Whether 750 ILCS 65/9 invalidates transfers made from a husband to wife where husband was not insolvent, owed no debt to creditors, and had no intent to defraud any creditors**

Doris claims that the bankruptcy court did not properly interpret section 9 of the Rights of Married Persons Act. (Appellant's Br. at 4.)  According to Doris, "only the rights of creditors whose claims existed at the time of the transfer are relevant under the Married Persons Act, and then, only if the alleged transfers were made when the husband was insolvent," and the Trustee has not shown and cannot show that Jordon gave the valuables for Doris with the intent to frustrate then-existing creditors. (*Id.* at 4-5.)  To interpret the Rights of Married Persons Act to allow a husband's creditors to reach his wife's valuables simply because the husband purchased them would "eliminate the distinction between husband and wife [in the eyes of creditors] which is meant to be protected by the Married Persons Act." (*Id.* at 8-9.)

The Trustee claims that section 9 applies to all transfers of "goods and chattels" between husband and wife irrespective of fraudulent intent, insolvency, or the status of the giving spouse's debts at the time of the transfer. (Appellee's Br. at C-1, C-4.)

Section 9 of the Rights of Married Persons Act, 750 ILCS 65/9, provides that, when a husband and wife live together, "no transfer or conveyance of goods and chattels between the husband and wife shall be valid as against the rights and interests of any third person unless the transfer or conveyance is in writing and filed in the same manner as security interests are required to be filed by the laws of this State in cases where the possession of the property is to remain with the person giving the security."

The statute itself says nothing about the giving spouse's fraudulent intent, insolvency or the status of his or her debts, and Doris has cited no authority directly supporting her position that the statute only applies when a transfer has the effect of frustrating the giving spouse's

4

creditors in some way. She cites numerous cases, but all of them are distinguishable, either (or both) because they do not actually interpret section 9 of the Rights of Married Persons Act or they involve transfers of real property, cash, or a chose in action rather than a transfer of "goods" or "chattels" that might trigger the statute. Indeed, Doris admits that only one of the cases she cites, *Knowles v. Crow*, 6 N.E.2d 892 (Ill. App. Ct. 1937), even "references" section 9, but she neglects to mention that *Knowles* cited section 9 in the context of a discussion of whether a husband's payments of insurance premiums on behalf of his wife and his transfers of cash to her, all unrecorded, were void as to creditors based on the husband's insolvency at his death.[2] *Id.* at 894. The court's conclusion that such cash payments were not invalidated by the failure to comply with a recording statute that explicitly applies only to "transfers and conveyances of ***goods and chattels***"—in other words, a statute that did not apply in that case—provides little support for any contention that the failure to comply with that recording statute should be forgiven merely because the challenged transfers were not fraudulent.

The parties offer competing viewpoints on the purpose of section 9, but this discussion is of limited usefulness when the plain language of the statute is perfectly clear.[3] Section 9 requires the parties to record any gift of goods or chattels between spouses who live together, with no mention of fraudulent intent or insolvency or either spouse's debt history.[4] Illinois

---

[2] The creditor in *Knowles* did allege that the husband transferred to his wife "goods and chattels," the "exact nature and kinds" of which were "unknown." *Id.* at 893. However, the court did not address the issue of whether the creditor could reach these goods and chattels under section 9, nor did it mention section 9 at all in connection with the goods and chattels; it stated only that no action as to the goods and chattels could be sustained based on such vague and indefinite allegations. *Id.* at 894.

[3] Even if the Court were inclined to consider the purpose of section 9, it would agree with the Trustee that the statute's purpose is not necessarily to prevent transfers made with the intent to frustrate existing creditors but, more broadly, to provide notice as to who owns the goods and chattels within a home shared by two spouses, given that transfers between spouses living together are likely to be undetectable to the outside world because there may be no apparent change of possession to signal the change in ownership. *See Cole v. Marple*, 98 Ill. 58, 67 (1880); *Larsen v. Ditto*, 90 Ill. App. 384, 390-92 (1st Dist. 1899).

[4] This is not to suggest that a transfer between spouses that is recorded in compliance with section 9 is necessarily valid even if it is designed to frustrate creditors. Such a transfer may well be invalid on other grounds, but matters of fraudulent intent or insolvency have nothing to do with section 9 *per se*.

5

courts have required strict compliance with the recording obligation of section 9, *see, e.g., Luthy & Co. v. Paradis*, 132 N.E. 556, 558-59 (Ill. 1921), without considering whether the transfer was fraudulent or the giving spouse insolvent, *Wineberger v. Bliss*, 53 Ill. App. 112, 114-15 (3d Dist. 1894),[5] *Holzinger v. Gilbert*, 62 Ill. App. 96, 96-97 (1st Dist. 1896).

Doris argues that to accept the Trustee's interpretation of section 9 is to render other portions of the Rights of Married Persons Act meaningless. For example, section 15 of the Rights of Married Persons Act provides as follows:

> No creditor, who has a claim against a spouse or former spouse for an expense incurred by that spouse or former spouse which is not a family expense, shall maintain an action against the other spouse or former spouse for that expense except:
> (A) an expense for which the other spouse or former spouse agreed, in writing, to be liable; or
> (B) an expense for goods or merchandise purchased by or in the possession of the other spouse or former spouse, or for services ordered by the other spouse or former spouse.

750 ILCS 65/15(a)(2). According to Doris, this section shows that the Rights of Married Persons Act is intended to maintain separation between husband and wife in the eyes of creditors by separating their debts rather than their assets, but the Trustee's position would permit "any creditor with any claim against one spouse [to] attempt to collect on its claim from the property of the other simply by claiming all transfers between them are void." (Appellant's Br. at 9.)

This argument is not convincing. The Court fails to see how the Trustee's interpretation of section 9 would undercut the purpose of section 15. Section 15 has nothing to do with transfers or conveyances between spouses; it concerns a spouse's liability for "expenses"

---

[5] According to Doris, *Wineberger* is distinguishable because it involved a transfer that was void because it was suspiciously made only ten days before a creditor obtained a judgment against the giving spouse. Doris misreads this case. Ten days elapsed between the date of the bill of sale and the date a justice of the peace entered a certificate of acknowledgement on his docket as part of the recording process, not between the transfer and the judgment against the giving spouse. The opinion is silent as to when the judgment against the giving spouse was executed, and at no point in the opinion does the court address any allegation that the transfer was made with intent to defraud or frustrate creditors. The opinion solely addresses the question of whether the transfer is invalid because it was not properly recorded. 53 Ill. App. at 114-15.

6

incurred by the other spouse. Section 15 would apply under circumstances in which there was no transfer between spouses for a creditor to claim void under section 9.[6] If there is a transfer between spouses, and the giving spouse wishes to protect the other spouse from after-arising creditors, "the solution is simple: record the transfer." (Appellee's Br. at C-11.)

The plain language of Section 9 of the Rights of Married Persons Act requires all conveyances of good and chattels between spouses to be recorded. The transfers in this case were not recorded, and they are therefore void as to third parties.

II.  **Whether gifts of valuables from husband to wife are "transfers" for purposes of 750 ILCS 65/9**

Doris argues that the items the Trustee seeks in this case are not properly classified as gifts and were never actually transferred from Jordon to Doris; rather, they always belonged to Doris, although Jordon may have paid for them. She contends that her husband had only a fleeting ownership of the valuables prior to giving them to Doris, and that "fleeting status does not transform the gift of jewelry into a transfer of chattels but rather one of cash." (Appellant's Br. at 12.)

The Trustee counters that Doris made numerous "admissions" that are inconsistent with the theory that the disputed items were not gifts, and she cannot disavow her admissions now. (Appellee's Br. at C-12.) In her answer to the amended adversary complaint in this case, Doris admitted that Jordon purchased at least some of the disputed property as "gifts" for Doris (Appellant's Br., Ex. 2, ¶ 22), and her second affirmative defense was that "[t]he Trustee is not entitled to relief under Count III of the Amended Complaint because 750 ILCS 65/9 does not provide the Trustee or creditors with a cause of action to avoid *transfers*" (*Id.*, Ex. 2, Affirmative

---

[6] Doris's argument on this point is not entirely clear, but to the extent it is predicated on her contention that there was no transfer in this case because the property in question always belonged to her, it must fail, for the reasons discussed *infra*.

Defenses ¶ 2 (emphasis added)). At no point did she suggest, even in the alternative, that the items were not gifts or had not been transferred from Jordon to Doris; quite to the contrary, she asserted that they *were* gifts. Further, Doris asserted in two of her answers to interrogatories that all the disputed property was "gifted to Doris Kaiser by Jordon Kaiser upon acquisition during the marriage." (Statement, Ex. 2, ¶¶ 5-6.) Doris never filed a response to the Trustee's Statement of Undisputed Material Facts on summary judgment, and the Trustee contends that she thereby admitted that her husband "purchased, acquired and owned (although briefly)" the property at issue. (Appellee's Br. at C-13 (citing Statement ¶13, 17, 18).)

The bankruptcy court also relied on Doris's "admissions" in its ruling, noting it was only *after* the Trustee moved for summary judgment that Doris, in a declaration attached to her response brief, revised her position on whether the disputed valuables were gifts. (Appellant's Br., Ex. 8, at 19; *see* Resp., Bankr. N.D. Ill. 13-00340, ECF No. 50.) The court ruled that Doris's initial argument that the items in question were not part of Jordon's bankruptcy estate because he had previously given them to her is "simply not supported by the Illinois law," and it was only when that argument "appeared to be less than successful [that] the . . . argument morphed . . . into an argument that these gifts weren't really gifts at all." (Appellant's Br., Ex. 8, at 21.) This new argument, the bankruptcy court concluded, which was "not part of the defendant's answer, and not at all supported by the interrogatories and the other facts before the court," was inconsistent with the evidence the parties had developed and, "given . . . the time on which it was brought and the procedure by which it was brought," insufficient to convince the court that there was a genuine issue of material fact.

This Court agrees with the bankruptcy court. Throughout this adversary proceeding, it was clear that Doris's position was that the disputed items were gifts from Jordon. Doris stated

8

that position in written documents submitted to the bankruptcy court, including her answer and interrogatory responses. A party may be bound to statements she made in her answer as judicial admissions. *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005), *J & J Sports Prods., Inc. v. Greathouse*, No. CV-13-00922-PHX-GMS, 2015 WL 717907, at *3-4 (D. Ariz. Feb. 19, 2015); *see also Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995) (formal statements in the pleadings are judicial admissions). In addition to statements in a party's pleadings, "[a]ny 'deliberate, clear and unequivocal' statement, either written or oral, made in the course of judicial proceedings qualifies as a judicial admission." *In re Lefkas Gen. Partners No. 1017*, 153 B.R. 804, 807 (N.D. Ill. 1993) (quoting *Matter of Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992)); *see also McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 680 (7th Cir. 2002) (quoting *Lefkas*). Doris's statements that the disputed property was given to her by her husband, which were made in writing—and therefore with opportunity for careful consideration[7]—and volunteered without any prompting or suggestion by the Trustee, are "deliberate, clear and unequivocal."

Additionally, the Seventh Circuit has "long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions . . . . If such contradictions were permitted . . . 'the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut.'" *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1171 (7th Cir. 1996) (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th

---

[7] Unlike, for example, an off-the-cuff remark made by a party at her deposition. *See Guadagno v. Wallack Ader Levithan Assocs.*, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997) ("As a practical matter, a party-deponent cannot reasonably be held to the same precision of expression, breadth of knowledge, or legal expertise as a party responding through counsel to a written interrogatory. As a matter of function within the legal process, the purpose of a response to contention interrogatory is entirely different from an answer to a question at a party deposition . . . .")

Cir. 1985)). This rule applies not only to affidavits that contradict deposition testimony but also to those that contradict other discovery responses such as interrogatory answers. *See S.E.C. v. Cook*, No. 1:13-CV-01312-SEB, 2015 WL 5022152, at *22 (S.D. Ind. Aug. 24, 2015); *cf. Viasystems Techs. Corp., LLC v. Landstar Ranger, Inc.*, No. 10-C-577, 2011 WL 2912763, at *3-4 (E.D. Wis. July 15, 2011) (recognizing that affidavit cannot create issue of material fact if it conflicts with affiant's interrogatory responses, but finding no conflict in that particular case). Doris has submitted just the sort of self-contradictory affidavit, in response to an opponent's apparently meritorious argument on summary judgment, that the Seventh Circuit specifically prohibits. *See Teynor v. King*, No. 01-C-146-C, 2002 WL 32342679, at *1 (W.D. Wis. Feb. 7, 2002) ("It is important to note that plaintiff's affidavit . . . postdates defendants' brief in support of their motion for summary judgment . . . . The interplay between defendants' brief and plaintiff's affidavit fits the 'classic pattern' in which 'a party seeks to create an issue of fact by simply submitting an affidavit which directly contradicts a witness' earlier sworn comments.' When such an affidavit 'pops up in the immediate context of summary judgment' it is 'easy' to conclude that the affidavit is a 'sham' and that it must be disregarded.") (quoting *Bank of Ill.*, 75 F.3d at 1173 (Cudahy, J., concurring) (internal citations omitted)). Under these circumstances, the Court must reject Doris's argument that the items at issue were not gifts transferred to her from Jordon.

Even if the Court were to reach the merits of the argument, it is unpersuasive. In her appellate brief, Doris cites only two Illinois cases in support of her argument that the disputed valuables are not gifts, and neither is apposite. Doris cites *Vieth v. Chicago Title & Trust Co.*, 30 N.E.2d 126, 131 (Ill. App. Ct. 1940), for the proposition that a husband who makes payments on behalf of his wife does not give her a gift but merely acts as her agent. The payments in *Vieth*,

however, were life insurance premiums, not payments for goods and chattels, and the decision was based at least partially on interpretation of a particular statute concerning a wife's right to insure the life of her husband, which does not apply here. *Vieth* does not support the broad proposition for which Doris cites it, and it is simply not analogous to the present case. Doris also cites *Arliskas v. Arliskas*, 175 N.E. 6, 7 (Ill. 1931), for the proposition that when a husband gives something to his wife, it makes no difference, for purposes of determining who owns the gift, that he furnished the money for the purchase; but in *Arliskas*, the purchase in question was a parcel of land (not goods or chattels) that the husband purchased, owned, and subsequently deeded to his wife. *Arliskas* does not support Doris's position, and it is not analogous to this case.

Certainly, neither case convinces the Court that a husband who "accompanied his wife to fancy stores, asked her to pick out what she wanted, purchased the items, and then delivered her the gifts" (Reply at 6), did not "transfer" the items to his wife within the meaning of section 9 of the Rights of Married Persons Act. The Trustee points out "there is nothing in the statute that exempts from the recording requirement goods or chattels that were purchased and owned by the husband but intended to be transferred to the wife." (Appellee's Br. at C-13.) A gift is "a voluntary, gratuitous transfer of property by one person to another where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee." *Moniuszko v. Moniuszko*, 606 N.E.2d 468, 472 (Ill. App. Ct. 1992). The transfers in this case meet the definition of gifts under Illinois law.

## **CONCLUSION**

For the reasons set forth above, the Court affirms the bankruptcy court's judgment.

**SO ORDERED.**

                                           **ENTERED: September 25, 2015**

                                           **HON. JORGE L. ALONSO**
                                           **United States District Judge**